```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE NO. 076-23016-Civ-LENARD
                                    MAGISTRATE JUDGE P.A. WHITE

ANTHONY B. WILSON,              :

     Petitioner,                :

v.                              :         REPORT OF
                                          MAGISTRATE JUDGE
WALTER A. McNEIL,¹              :

     Respondent.                :
_____
```

Anthony B. Wilson, a state prisoner confined at South Bay Correctional Institution at South Bay, Florida, has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking the constitutionality of his convictions entered in Case No. 99-26183 in the Circuit Court of the Eleventh Judicial Circuit of Florida at Miami-Dade County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition, the Court has the petitioner's response to an order regarding the limitations period with attached exhibits, the respondent's response to orders to show cause with multiple exhibits, and the petitioner's reply.

Wilson raises the sole ground for relief that he was denied a

---

    ¹Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

fundamentally fair trial when the state was permitted during cross-examination to ask him whether the state witnesses had lied when testifying or had been conspiring against him.

The procedural history of this case is as follows. Wilson was convicted after a jury trial of attempted first degree murder and burglary with a battery while armed with a knife. See Wilson v. State, 880 So.2d 1287 (Fla. 3 DCA 2004). Wilson had also been charged with, but was acquitted of, aggravated stalking of victim Pope and of his girlfriend, Shirley Bertrand. Id. Wilson prosecuted a direct appeal from his convictions, raising the following two claims: (1) the trial court erred in admitting into evidence numerous hearsay statements from Shirley and other witnesses where they were inadmissible hearsay within hearsay and were not admissible as an excited utterance, spontaneous statement, or state of mind exception to the hearsay rule, in violation of the United States and Florida Constitutions; and (2) the trial court erred in permitting the prosecutor to ask Wilson during cross-examination whether the other witnesses who testified were lying or conspiring against him, in violation of Wilson's right to a fair trial under the United States and Florida Constitutions. (DE# 16; Ex. A). The Florida Third District Court of Appeal initially held that the state had improperly cross-examined Wilson, but subsequently affirmed the conviction upon the state's motion for rehearing, finding the error harmless. (DE# 16; Ex. C). See also Wilson v. State, 880 So.2d at 1287-88. The Florida Supreme Court declined to accept jurisdiction. Wilson v. State, 891 So.2d 554 (Fla. 2004)(table).

Approximately four months later, Wilson returned to the trial court, filing a pro se motion for postconviction relief pursuant to Fla.R.Crim.P. 3.850, challenging his convictions on four grounds of

ineffective assistance of trial counsel. (DE# 16; Ex. F). After having reviewed the state's response, the trial court summarily denied Wilson relief on his claims, finding that he had failed to demonstrate that he had received ineffective assistance of trial counsel pursuant to the applicable standard established in Strickland v. Washington, 466 U.S. 668 (1984). (DE# 16; Ex. G). Wilson took an appeal from the trial court's ruling, and the Florida Third District Court of Appeal reversed the order and remanded the case to the trial court for an evidentiary hearing on Wilson's claims or for the attachment of record excerpts conclusively showing that Wilson was not entitled to any relief. Wilson v. State, 937 So.2d 143 (Fla. 3 DCA 2006). The state's motion for rehearing was denied. (DE# 16; Ex. K, L, M, N). While the record is not completely clear regarding subsequent proceedings on the Rule 3.850 motion, it appears that the trial court conducted an evidentiary hearing on all or some of the claims raised and then again denied postconviction relief. See Response to Court Order Limitation Period; Response to Order to Show Cause at 4-5. (DE# 12, 14). See also Criminal Justice Information System Docket Query at 1. (DE# 16; Ex. N). It does not appear that Wilson took an appeal from the trial court's ruling.

While the Rule 3.850 proceedings were pending in the trial and appellate courts, Wilson also filed in the Third District Court of Appeal a pro se petition for writ of habeas corpus with attached exhibits, claiming that he received ineffective assistance of appellate counsel in that his lawyer failed to seek a rehearing from the final decision of the Third District Court of Appeal in the direct appeal proceeding and failed to properly pursue a petition for discretionary review before the Florida Supreme Court. (DE# 16; Ex. D). Without first requiring a response from the state, the petition was denied without explanation, and Wilson's motion

for rehearing was denied. (DE# 16; Ex. E). See also Wilson v. State, 928 So.2d 354 (Fla. 3 DCA 2006)(table). Approximately four months after all state court proceedings had concluded, Wilson came to this Court filing the instant came to this Court, filing the instant federal habeas corpus petition pursuant to 28 U.S.C. §2254.

The respondent rightfully does not challenge the timeliness of this petition. See 28 U.S.C. §2244(d). The respondent also correctly concedes that the sole claim presented in this federal petition has been properly unexhausted before the state courts. See 28 U.S.C. §2254(b)(1) and (b)(1)(A).[2] Accordingly, the respondent has addressed on the merits the claim raised.[3]

Pursuant to the Antiterrorism and Effective Death Penalty Act

---

[2] An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5 Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5 Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. Leonard v. Wainwright, 601 F.2d 807, 808 (5 Cir. 1979). Claims of ineffective assistance of appellate counsel must be raised by petition for writ of habeas corpus in the appropriate district court of appeal. State v. Dist. Ct. of Appeal, First Dist., 569 So. 2d. 439, 442 n.1 (Fla. 1990).

[3] It is noted that the respondent has not provided this Court with a copy of the trial transcript. While it certainly would have been preferable for this Court to have a copy of the trial transcript, this Court will not now delay disposition of the instant petition to require the respondent to submit the missing transcript. This Court will instead rely on the extremely thorough recitation of the evidence admitted at trial with record citations and extensive quotes of the testimony set forth in Wilson's Initial Brief filed in the direct appeal proceeding, the accuracy of which has not been challenged by Wilson. See Initial Brief of Appellant at 1-28. (DE# 16; Ex. A). This Court will further rely on the pertinent evidence as summarized by the Florida Third District Court of Appeal as set forth in its opinion on direct appeal, as quoted herein. See Wilson v. State, 880 So.2d 1287, 1288-1289 (Fla. 3 DCA 2004).

(AEDPA), the role of a federal habeas court when reviewing a state prisoner's petition pursuant to 28 U.S.C. §2254 is limited. See Williams v. Taylor, 529 U.S. 362, 403-404 (2000). Specifically, pursuant to §2254(d)(1), the writ may issue only if (1) the state court's adjudication resulted in a decision that "(1) 'was contrary to .... clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) "involved an unreasonable application of .... clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 412-13 (*quoting* 28 U.S.C. §2254(d)(1)). Further, a federal court must presume the correctness of the state court's factual findings. See 28 U.S.C. §2254(e)(1); Putman v. Head, 268 F.3d 1223, 1241 (11 Cir. 2001), cert. denied, 537 U.S. 870 (2002).

Wilson claims that he was denied a fundamentally fair trial when the state was permitted during his cross-examination to ask him whether the state witnesses had lied when testifying or had been conspiring against him. Wilson is not entitled to habeas corpus relief on his claim in that no constitutional violation has been demonstrated.

The record reveals that Wilson was charged by information with attempted first degree premeditated murder with a knife of Antron Pope and burglary with a battery while armed with a knife in connection with the stabbing of Antron Pope inside Pope's home. At trial, Wilson's theory was self-defense, and he testified in his own behalf that he had gone to Pope's home to talk, but Pope came at him with a knife. See Wilson v. State, 880 So.2d 1287, 1288 (Fla. 3 DCA 2004).[4] While it was disputed at trial *how* the injuries

---

[4]This Court must generally afford a presumption of correctness of the factual findings of state courts. See 28 U.S.C. §2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts. See Sumner v. Mata, 449 U.S. 539, 547 (1981). Although the

5

had occurred, it was undisputed, however, that Pope suffered multiple stab wounds, several on the back of his head, his arm, shoulder, and abdomen. Id. Further, it was beyond dispute that several of these wounds were serious enough to have caused death if they had not been promptly treated and all of them needed to be sutured. Id. Wilson had also been charged, but was acquitted, of aggravated stalking of Pope and of his girlfriend, Shirley Bertrand. Shirley Bertrand had been Wilson's former girlfriend and the mother of his child and Pope was her then-new boyfriend. See Initial Brief of Appellant at 1-28. (DE# 16; Ex. A). Bertrand was not called as a witness at trial, because she had died before the trial, for reasons unrelated to this case. Id. at 2.

The identical issue presented in this federal proceeding was raised on direct appeal and in it substituted opinion, the Florida Third District Court of Appeal concluded that the prosecutor's questions to Wilson on cross-examination whether all of the other witnesses, whose version of events differed from his, had been lying and conspiring against him was harmless error. See Wilson v. State, 880 So.2d 1287 (Fla. 3 DCA 2004). Specifically, after summarizing the facts of the case, the appellate court stated as follows in its written opinion:[5]

> After Wilson had denied on cross examination that he had ever harassed or threatened his ex-girlfriend and the victim or that he wanted to reunite with her, the inappropriate

---

Court in *Sumner* was interpreting section 2254 as it existed pre-AEDPA, the holding hinged on the fact that no distinction was made between state trial and appellate courts in the pre-AEDPA version of section 2254--a fact which continues to be true of the current version of the statute. Bui v. Haley, 321 F.3d 1304, 1312 (11 Cir. 2003).

[5] As indicated, the initial brief on direct appeal contains an extensive summary of the evidence admitted at trial and also includes extensive quotes of pertinent testimony of the witnesses called at trial. See Initial Brief of Appellant at 1-28.

6

questioning included:

> Q: You sat there the whole time and listened to what everybody said?
>
> A: Yes.
>
> Q: You heard what Kia[6] said. That you were harassing Shirley, you were coming by constantly and wouldn't go away?
>
> A: I heard everything.
>
> Q: You heard what Dakeidra[7] said, you were coming to the house and you were harassing Shirley and wanted Shirley back. You heard that?
>
> A: Yes.
>
> Q: You heard Antron's testimony, yes?
>
> A: Yes.
>
> Q: And you heard today, Shirley's own mother come in here and testify about how you were threatening her daughter and how you were threatening Antron. **But they're all lying?**
>
> > DEFENSE COUNSEL: Objection. He has to be here during trial.
> >
> > THE COURT: No speaking objection. Objection overruled. Talk about it sidebar. Continue.
> >
> > DEFENSE COUNSEL: May I have a sidebar? It is improper to ask one witness-
> >
> > THE COURT: Stop, stop. That is a speaking objection.[footnote omitted].

---

[6]Kia Samuels had been a friend of Shirley's, and she had witnessed arguments between Wilson and Shirley, some of them regarding Pope. See Initial Brief of Appellant at 3-12. Samuels testified regarding one incident a few days before the subject stabbing where Shirley had sustained physical injuries at the hand of Wilson. Id. at 8-10.

[7]Dakeidra Faniel had also been a friend of Shirley, and she too testified about conversations she had had with Shirley regarding her tumultuous relationship with Wilson. See Initial Brief of Appellant at 3, 12-4. Faniel also testified regarding the incident that took place a few days before the subject stabbing where Shirley claimed that Wilson had punched her. Id. at 13-4.

7

> Q: **Do you believe that all these witnesses are conspiring against you?**
>
> A: Well-
>
> Q: **That's what you think, this is a big conspiracy? You've got the officer. You've got Shirley's mother. You've got Shirley's friend. You got Antron, the ex-boyfriend. You got everybody coming in here saying the same thing, but it is because they are conspiring against you?**
>
> DEFENSE COUNSEL: Objection. That is argumentative.
>
> THE COURT: Overruled.
>
> Q: **Yes or no, are they conspiring against you?**
>
> A: Yes.

We agree with Wilson that the prosecution's questions were improper. In *Whitfield v. State,* 549 So.2d 1202 (Fla. 3d DCA 1989), we stated that "[i]n a criminal prosecution, it is improper cross examination to ask a witness if another witness (who had previously testified) 'was lying.'" We are not impressed by the State's argument on appeal that we should draw a distinction between "lying" and "conspiring."

Such an error, however, is subject to a harmless error analysis. *See Knowles v. State,* 632 So.2d 62, 65-66 (Fla.1993).[8] We thus conclude that the prosecution's

---

[8]The pertinent portion of the Florida Supreme Court's opinion in *Knowles* is as follows:

> Knowles' next claim is that it was error to allow the prosecutor to ask him whether he thought two state's witnesses were lying. On cross-examination, Knowles testified that he did not remember making the statement to Wayne Johnson about giving his father a surprise one day. Knowles also claimed that he did not remember making the statement to Earl Fagin about shooting people in the trailer park. In both instances, the state asked Knowles, over objection, whether he thought the state's witness was lying and why.
>
> We agree that this line of questioning was improper. In *Boatwright v. State,* 452 So.2d 666 (Fla. 4th DCA 1984), the court explained that asking a witness if a prior witness who testified differently is lying is improper for a number of reasons. First, allowing one witness to offer a personal view on the credibility of a fellow witness is an invasion of the province of the jury to determine a witness's credibility. Second, although the fact that two witnesses disagree does not necessarily establish that one is lying, such questioning may lead the jury to conclude that the witness being questioned is actually lying. Finally, unless there is evidence that the witness is privy to the thought processes of the other witness, the witness

> isolated questions were questions that do not warrant reversal as they were harmless beyond a reasonable doubt. This conspiracy of witnesses against Wilson was not mentioned during the State's closing argument. The questions cannot possibly vitiate the entire eight-day trial, and they did not change the physical evidence of multiple stab wounds suffered by Pope. Furthermore, the context of the questions followed other questions concerning the harassing and threatening of Pope and his girlfriend Shirley, which went more to the charges of stalking, for which Wilson was acquitted.

(emphasis supplied). Id. at 1288-89.

To prevail on a claim of prosecutorial misconduct in a federal habeas corpus proceeding, a petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). See also Greer v. Miller, 483 U.S. 756, 765 (1987)(quoting Donnelly v. DeChristoforo, 416 U.S. at 643). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. Darden v. Wainwright, 477 U.S. 168, 181 (1986). In other words, the complained-of conduct must be so egregious as to render the entire trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. at 642-45. See also Greer v. Miller, 483 U.S. 756, 765 (1987)("To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's

---

> is not competent to testify concerning the other's state of mind. 452 So.2d at 668. While this line of questioning was error, under the circumstances we find the error harmless beyond a reasonable doubt. Knowles testified that he did not remember making the statements. Thus, the jury could have believed both Knowles and the state's witnesses. Because the improper questioning concerning the veracity of the state's witnesses did not necessarily lead to the conclusion that Knowles was lying, there is no reasonable possibility that the error affected the outcome of Knowles' trial.

Knowles v. State, 632 So.2d 62, 65-6 (Fla. 1993).

right to a fair trial." (internal quotations and citations omitted)); Davis v. Zant, 36 F.3d 1538, 1545 (11 Cir. 1994)(citing Donnelly v. DeChristoforo, 416 U.S. at 645). Although even a single improper question can provide a basis for habeas relief, it can do so only under unusual circumstances. Thus, "a prosecutor's unprofessional cross-examination ... cannot give rise to a constitutional claim unless the prosecutor's acts constitute 'egregious misconduct.'" Miranda v. Bennett, 322 F.3d 171, 180 (2 Cir. 2003)(*quoting* Donnelly v. DeChristoforo, 416 U.S. at 647-48).

In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, Hance v. Zant, 696 F.2d 940 (11 Cir.), cert. denied, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." Williams v. Weldon, 826 F.2d 1018, 1023 (11 Cir.), cert. denied, 485 U.S. 964 (1988). When viewing the now-challenged questions in the context of the entire trial, it is apparent that the now-challenged inquiry did not have that effect and was a fair line of inquiry conducted in light of the testimony provided by Wilson on direct examination and the defense theory presented.

The courts have held that calling the defendant a "liar," though perhaps undesirable, does not rise to the level of a constitutional violation particularly where, as here, "the statements would have been perceived only as commentary on the implausibility of the defendant's story." United States v. Hernandez-Muniz, 170 F.3d 1007, 1012 (10 Cir. 1999). See also Bland v. Sirmons, 459 F.3d 999, 1025 (10 Cir. 2006)(while labeling a defendant as a liar may be improper in certain situations, "it is

10

permissible for the prosecution to comment on the veracity of a defendant's story"). Further, a petitioner is not deprived of due process where a prosecutor asserts that a defense witness lied, including the defendant, where such statements were reasonable inferences drawn from the physical evidence and witness testimony. See United States ex. rel. Williams v. Washington, 913 F.Supp. 1156, 1163-1164 (N.D.Ill. 1995). See also White v. Kapture 2001 WL 902500, *11 (E.D.Mich. 2001)(holding that a state prosecutor's references to a defendant as a liar and to the defendant's testimony as lies does not violate a habeas petitioner's right to a fair trial where the evidence of guilt is overwhelming, the remarks are isolated, and the remarks do not mislead the jury).

While it is true that the prosecutor's express and implicit suggestions through the above-quoted questions that Wilson was a liar and/or had accused state witnesses of lying, while gratuitous and not the model for prosecutorial examination, did not deprive Wilson of a fair trial. See e.g., Byrd v. Collins, 209 F.3d 486, 536 (6 Cir. 2000)(holding that prosecutor's use of term "predator" to describe murder defendant did not deprive defendant of fair trial), citing, Olsen v. McFaul, 843 F.2d 918, 930 (6 Cir. 1988)(denying habeas relief and holding that the petitioner had not been deprived of a fair trial even where the prosecutor referred to the petitioner as a "deadbeat," "thief," "creep," and "liar"); United States v. Catalfo, 64 F.3d 1070, 1080 (7 Cir. 1995)("Where the character and credibility of the defendant are at issue and the evidence allows the inference that the defendant has been less than truthful, the prosecutor does not err in closing argument by referring to the defendant as a liar."); United States v. Dean, 55 F.3d 640, 665 (D.C.Cir. 1995)(holding that use of the word lie is permissible, depending on context and tone of summation, and as long as "the prosecutor sticks to the evidence and refrains from

11

giving his personal opinion"); United States v. Jacoby, 955 F.2d 1527, 1540-41 (11 Cir. 1992)(holding that prosecutor's comments in criminal prosecution of bank officials, remarking that, given glaring differences in testimony between prosecution and defense witnesses, "someone is committing perjury," and that testimony of two witnesses regarding fact in issue was "absolute lie," although colorful and perhaps flamboyant, were neither improper nor unduly prejudicial and did not require reversal; in each instance, prosecutor asked jury to consider and draw its conclusions from evidence in case, and jurors were instructed that argument by counsel was not evidence).

In this case, Wilson's testimony conflicted with testimony of the other state witnesses, such as, the victim and Shirley's friends and relatives, rendering the credibility of Wilson versus the credibility of the state's witnesses a key issue for the jury. However, even if improper, as determined by the state appellate court, the questions did not have the effect of vitiating the entire trial, which is evidenced by the fact that the subject questions followed other questions concerning the harassing and threatening of Pope and his girlfriend Shirley, which went more to the charges of stalking, for which Wilson was acquitted. Thus, under the totality of the circumstances, including the strength of the evidence of Wilson's guilt, it is apparent that the prosecutor's questions were at worst no more than harmless error. See Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), quoting, Kotteakos v. United States, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict).

It is noted that the jury apparently rejected the defense as

to the crimes for which he was convicted as was its prerogative and instead believed the evidence admitted by the state and the strong testimony of the state witnesses. In the process of reviewing the record to determine whether federal constitutional standards were violated in a habeas petitioner's underlying criminal case, the Court does not close its eyes to the reality of evidence of guilt fairly established in state court. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377-78 (1971). <u>See</u> <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 684 (1986). This Court must defer to the jury's judgment as to the weight and credibility of the evidence. <u>See</u> <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1143 (11 Cir. 1987). Moreover, taken in the light most favorable to the state, the competent evidence admitted at trial upon which the jury's verdict was based was more than ample to have permitted a rational trier of fact to find that Wilson committed the crimes for which he was convicted. <u>See</u> <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).

Accordingly, the state appellate court's rejection on direct appeal of the identical claim presented in this federal petition, is not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Relief must therefore be denied pursuant to 28 U.S.C. §2254(d). <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

Based upon the foregoing, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 24th day of June, 2008.

_____
UNITED STATES MAGISTRATE JUDGE


cc:   Anthony B. Wilson, Pro Se
      DC# M32119
      South Bay Correctional Facility
      600 U.S. Highway 27 South
      South Bay, FL 33493

      Jill Diane Kramer, AAG
      Department of Legal Affairs
      444 Brickell Avenue
      Suite 650
      Miami, FL 33131