UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-23016-CIV-LENARD/WHITE

**ANTHONY B. WILSON**,

        Petitioner,

vs.

**WALTER A. McNEIL**,

        Respondent.

_____/

**ORDER ADOPTING SUPPLEMENTAL REPORT OF MAGISTRATE JUDGE (D.E. 31), DENYING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 (D.E. 1) AND CLOSING CASE**

**THIS CAUSE** is before the Court on the Supplemental Report of Magistrate Judge Patrick A. White ("Report," D.E. 31), issued on February 17, 2010. In his Report, Magistrate Judge White recommends that the Court deny Petitioner Anthony Wilson's ("Wilson") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition," D.E. 1). Petitioner filed Objections to the Report on March 29, 2010 ("Objections," D.E. 34). The Court has conducted a *de novo* review of the Petition, the Report, the Objections and the record, and finds as follows.

**I.**     **Background** [1]

The sole issue in the instant Petition is whether Wilson was denied a fundamentally fair trial due to alleged prosecutorial misconduct during cross-examination and closing

---

[1]     A complete recitation of the facts and procedural history of this case can be found in the Report and Recommendations of the Magistrate Judge (D.E. 19), issued on June 26, 2008.

arguments. Wilson alleges that his Constitutional rights were violated when the prosecutor was permitted to ask him, during cross-examination, whether the prosecution's witnesses lied during their testimony and were conspiring against him.[2] The prosecutor later made reference to Wilson's belief in the conspiracy against him during summation.[3]

---

[2] The relevant portion from Wilson's cross-examination at trial:

> Q: You sat there the whole time and listened to what everybody said?
> A: Yes.
> Q: You heard what Kia said. That you were harassing Shirley, you were coming by constantly and wouldn't go away?
> A: I heard everything.
> Q: You heard what Dakeidra said, you were coming to the house and you were harassing Shirley and wanted Shirley back. You heard that?
> A: Yes.
> Q: You heard Antron's testimony, yes?
> A: Yes.
> Q: And you heard today, Shirley's own mother come in here and testify about how you were threatening her daughter and how you were threatening Antron. But they're all lying?
> . . . .
> Q: Do you believe that all these witnesses are conspiring against you?
> A: Well –
> Q: That's what you think, this is a big conspiracy? You've got the officer. You've got Shirley's mother. You've got Shirley's friend. You got Antron, the ex-boyfriend. You got everybody coming in here saying the same thing, but it is because they are conspiring against you?
> . . . .
> Q: Yes or no, are they conspiring against you?
> A: Yes.

(Trial Tr. at 921-23.)

[3] From the prosecutor's closing arguments:

You have heard from a lot of witnesses. [Wilson] yesterday tells you that it's a conspiracy.

Now, we've heard a lot of preposterous things, but that is the ultimate. To say that Shirley's mother and Antron Pope, his family, his own friend, Dakeidra and Kia all

2

The Report finds that the prosecutor's line of questioning was "essentially a fair line of inquiry conducted in light of the testimony provided by Wilson on direct examination and the defense theory presented," which was to "expose the state witnesses as untruthful or at least inaccurate." (Report at 12 (citation omitted).) While acknowledging that questions as to the veracity of other witnesses' testimony have been found improper by state and federal courts, the Report nevertheless finds that the prosecutor's questions "were at worst no more than harmless error." (*Id*. at 17 (citations omitted).) The Report recommends that Wilson's Petition be denied. (*Id*. at 18 (citations omitted).)[4]

Wilson objects to the findings and recommendation of the Report. He contends that the questions directed to him regarding the credibility of other witnesses were not harmless error. (Objections at 8, citing *Knowles v. State*, 632 So. 2d 62 (Fla. 1993).) Wilson also takes issue with the Magistrate's "opinion" of the impact and purpose of the prosecutor's closing remarks, claiming it is outside the province of the 28 U.S.C. § 2254 analysis. (*Id*. at 17-19.) Ultimately, Wilson urges this Court to overrule the Report, finding instead that the Third

---

came in here to conspire against him, because of what?

Because it is not true. There is no conspiracy. The only thing we're trying to do is achieve the truth, get to justice, ladies and gentlemen.

(Trial Tr. at 981.)

[4] The Report was issued following this Court's Order Referring Petition to Magistrate Judge for Further Findings, specifically instructing the Magistrate to reconsider the Petition in light of the Florida appellate court's incorrect finding of fact in *Wilson v. State*, 880 So. 2d 1287 (Fla. 3d DCA 2004). Accordingly, this Report supersedes the Magistrate Judge's June 26, 2008 Report and Recommendation.

District Court of Appeals' September 9, 2004 decision was contrary to clearly established federal law and must be reversed.  (*Id*. at 19, citing 28 U.S.C. § 2254(d).)

## II.   Standard of Review

The Antiterrorism and Effective Death Penalty Act greatly limits the ability of federal courts to review state court convictions.  Pursuant to 28 U.S.C. § 2254(d), a federal court may not grant an application for a writ of habeas corpus on behalf of a person held in custody pursuant to a claim adjudicated on the merits in a state court unless the state court's adjudication of the claim, "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Regarding the first prong, "[a] state court decision is 'contrary to' clearly established federal law where the state court either applied a rule in contradiction to governing Supreme Court case law or arrived at a result divergent from Supreme Court precedent despite materially indistinguishable facts." *Hannon v. Dep't. of Corr.*, 562 F.3d 1146, 1150 (11th Cir. 2009) (citing *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006)).  A federal court may also grant relief "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  Nevertheless, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

4

erroneously or incorrectly," rather "that application must also be unreasonable." *Id.* at 411. In addition, findings of fact made by the state court are presumed correct and may only be rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Crowe v. Hall*, 490 F.3d 840, 844 (11th Cir. 2007). Finally, while federal courts typically must give deference to State court adjudications of claims in a habeas petition, *see* 28 U.S.C. § 2254(d)(1), such deference is not required if the State court failed to address the merits of a claim asserted by the petitioner. *See Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003).

## III. Discussion

During cross-examination, the prosecutor asked Wilson four times, over his objection, to opine on the veracity of the state's witnesses. Both federal and state courts have held that it is improper cross-examination to ask a witness if another witness was lying or for a witness to offer their personal view on the credibility of a fellow witness. *See, e.g., United States v. Sullivan*, 85 F.3d 743, 750 (1st Cir. 1996) (finding that "was-the-witness-lying" questions should not have been posed by prosecutors); *United States v. Boyd*, 54 F.3d 868, 871 (D.C. Cir. 1995) (finding improper the prosecutor's questions to defendant as to why police officers were "making this up" and putting their careers on the line "to get" him); *Whitfield v. State*, 549 So. 2d 1202 (Fla. 3d DCA 1989); *Boatwright v. State*, 452 So. 2d 666, 668 (Fla. 4th DCA 1984). Such questioning invades the jury's exclusive province as the sole arbiter of witness credibility. *See Boatwright*, 452 So. 2d at 668. The Court first considers whether questions regarding credibility are always improper and therefore *per se* error?

Quite simply, the answer is: no. Other circuit courts have found that questioning a

defendant regarding the credibility of government witnesses was proper when asked in rebuttal to the defendant's accusation that those witnesses lied. *See, e.g., United States v. Garcia-Gracia*, 324 Fed. Appx. 286, 295-96 (5th Cir. 2009) (no impropriety where "the prosecutor's questioning was intended as a response to [defendant's] effort to expose the government witnesses as untruthful or at least inaccurate"); *United States v. Cole*, 41 F.3d 303, 309 (7th Cir. 1994) (no error where prosecutor cross-examined defendant who "either implicitly or explicitly stated that the government witnesses lied"); *cf. Boyd*, 54 F.3d at 871, n.* ("[h]ad [defendant] testified on his own that the officers were lying, such questioning might be proper"). Character evidence presents another exception for testimony regarding witness credibility. *See United States v. Sanchez-Lima*, 161 F.3d 545, 548 (9th Cir. 1998).

The Court has reviewed relevant portions of the transcript in this case. Before proceeding further, the Court notes that Wilson was convicted of attempted first degree murder and burglary, despite his attempt to parry both charges with a theory of self-defense. Wilson was acquitted of aggravated stalking charges against both Bertrand and Pope. The Court finds that the individual and collective credibility of state's witnesses, Kia, Dakeidra and Bertrand's mother, went chiefly toward establishing Wilson's culpability for aggravated stalking of Bertrand and Pope. The implication of Pope's credibility went both to the stalking counts as well as Wilson's attempted murder and burglary of Pope.

With this in mind, the Court finds that the prosecutor's questions regarding the collective credibility of the state's witnesses was proper in light of Wilson's direct testimony and overall theory of defense. *Cf. Cole*, 41 F.3d at 309; *Boyd*, 54 F.3d at 871. Wilson's

account on direct examination of the events surrounding his relationship with his ex-girlfriend Bertrand, her (then) new boyfriend Pope and their fight contradicted those of the state's witnesses and by implication, suggested that their testimony was inaccurate or false. *See Garcia-Gracia*, 324 Fed. Appx. at 295-96. Insofar as Wilson attempted to negate or minimize his culpability for aggravated stalking and attempted premeditated murder by implying that the state's witnesses lied, the prosecutor did not commit error by questioning Wilson about his belief in their credibility. *Id.* at 296.

However, assuming the prosecutor's questions were improper and an error did indeed occur, the Court must review Wilson's allegation of prosecutorial misconduct under the harmless error standard. *See United States v. Castro-Gaxiola*, 60 Fed. Appx. 96, 97 (9th Cir. 2003) (harmless error standard used where defendant preserved objections at trial); *Knowles*, 632 So. 2d at 65-66 (same).

"[A] prosecutor's unprofessional cross-examination . . . cannot give rise to a constitutional claim unless the prosecutor's acts constitute 'egregious misconduct.'" *Miranda v. Bennett*, 322 F.3d 171, 180 (2d Cir. 2003) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 647-48 (1974)); *see United States v. Geston*, 299 F.3d 1130, 1136 (9th Cir. 2002) ("A prosecutor's improper questioning is not in and of itself sufficient to warrant reversal."); *United States v. Moreland*, 622 F.3d 1147, 1160 (9th Cir. 2010) (same). The Court must assess the prosecutorial misconduct in the context of the entire trial, *see Miranda*, 322 F.3d at 180, and determine "whether the prosecutor's actions seriously affected the fairness, integrity, or public reputation of judicial proceedings, or where failing to reverse a conviction

would result in a miscarriage of justice." *Geston*, 299 F.3d at 1136 (internal quotes and citation omitted).

The impact of the prosecutor's improper questions, when viewed in the context of the entire trial, does not reveal egregious misconduct or miscarriage of justice. Wilson's trial lasted eight days. *See Wilson*, 880 So. 2d at 1289. Several witnesses took the stand to testify against him. *See id.*; *compare Moreland*, 622 F.3d at 1160 (prosecution presented more than 75 witnesses). The state presented physical evidence of Pope's multiple, serious stab wounds, all of which were inflicted by Wilson. *See Wilson* at 1289. Thus, the Court is satisfied that the evidence of Wilson's culpability for attempted premeditated murder and burglary is considerable enough that the prosecutor's error is rendered harmless. *See Boatwright*, 452 So. 2d at 668 (affirming conviction for grand theft in light of overwhelming evidence of guilt); *see also Boyd*, 54 F.3d at 872. Moreover, because he was acquitted of the stalking charges, the remaining impact of the prosecutor's credibility questions is mooted.

The cases Wilson cites in support of his Objections are clearly distinguishable. This is not a case where "witness credibility [is] paramount." *See Moreland,* 622 F.3d at 1160; *Geston*, 299 F.3d at 1137 (Ninth Circuit found plain error where prosecutor repeatedly asked witnesses to comment on the testimony of other witnesses). Rather, evidence of Wilson's attack on Pope – conversely, his self-defense – could be divined from the physical and circumstantial evidence presented. Nor did the improper questioning by the prosecutor undercut Wilson's sole defense at trial. *Cf. Castro-Gaxiola*, 60 Fed. Appx. at 97 (defendant was sole witness who could testify in support of his defense of duress). Indeed, while

Wilson's self-defense argument failed to persuade jurors, he managed to successfully employ other defenses to the aggravated stalking charges. Finally, the Court also finds no evidence that this was a "close case" with respect to the attempted murder and burglary charges; and that the prosecutor's questioning affected the outcome. *See Geston*, 299 F.3d at 1136 (court found improper cross-examination to be plain error where defendant's first trial, which did not include improper questioning, ended in mistrial).

The Court has also reviewed the prosecutor's closing remarks and finds that they, too, do not merit reversal.

Calling the defendant a "liar" during closing argument does not necessarily rise to the level of a constitutional violation. *See United States v. Hernandez-Muniz*, 170 F.3d 1007, 1012 (10th Cir. 1999) (holding that referring to defendant's testimony as a lie does not constitute *per se* prosecutorial misconduct especially where statements could have been perceived only as commentary on the implausibility of defendant's story); *United States v. Allison*, 59 F.3d 625, 628 (7th Cir. 1995) (Seventh Circuit found harmless an intemperate comment made by prosecutor during summation). Here, the prosecutor called Wilson's conspiracy theory "preposterous." The underlying argument has been held proper, *i.e.*, that the state's version of conflicting evidence is correct. *See Duckett v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995) (finding that prosecutor's assertions regarding the relative believability of the state and defense witnesses were inferences drawn from the evidence and not reversible error). Although this Court prefers that prosecutors maintain the highest standards of decorum in the courtroom, "[o]verdrawn rhetoric in making a legitimate point does not

9

require a new trial." *United States v. Sblendorio*, 830 F.2d 1382, 1395 (7th Cir. 1995).

Under the totality of the circumstances, including the strength of evidence against Wilson at trial, the Court finds that the prosecutor's questions during cross-examination and comments during summation were not error. *See Garcia-Gracia*, 324 Fed. Appx. at 96. In the alternative, these were no more than harmless error. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (petitioner is entitled to federal habeas corpus relief only if the constitutional error at trial had substantial and injurious effect or influence in determining the jury's verdict).

Thus, despite the Florida Third District Court of Appeals' incorrect factual findings, *see Wilson* at 1289 ("This conspiracy of witnesses against Wilson was not mentioned during the State's closing argument"), its denial of Wilson's claim of constitutional violation is not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented at trial. Wilson's Petition must therefore be denied pursuant to 28 U.S.C. § 2254(d). *Williams*, 529 U.S. 362.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. The Supplemental Report of Magistrate Judge Patrick A. White (D.E. 31), issued on February 17, 2010, is **ADOPTED**.

2. The Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (D.E. 1), filed on November 20, 2007, is **DENIED**.

3. This case is **CLOSED**.

4. All pending motions and Report and Recommendations not otherwise ruled

upon are hereby **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Miami, Florida this 30th day of March, 2011.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**